1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GINA J. M.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

CASE NO. C22-891-BAT

**ORDER REVERSING THE COMMISSIONER'S DECISION**

      Plaintiff appeals the ALJ's denial of her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  She contends the Court should remand the case based upon new evidence submitted to the Appeals Council, and because the ALJ misevaluated her testimony and certain medical opinions, resulting in an erroneous residual functional capacity ("RFC") assessment.  Dkt. 10 at 1. For the reasons below, the Court REVERSES the Commissioner's final decision and remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

      Plaintiff is currently forty-five years-old, has a high school education, and previously worked as an insurance clerk, hospital admitting clerk, and residential leasing agent.  Tr. 64.  In March 2019, she applied for benefits, alleging disability as of February 13, 2017.  Tr. 565-82.

ORDER REVERSING THE COMMISSIONER'S DECISION - 1

1   Her application was denied initially and on reconsideration.  Tr. 381-408, 411-42.  The ALJ

2   conducted a hearing in June 2021 (Tr. 72-101), and subsequently issued a decision on August 17,

3   2021, finding Plaintiff not disabled.  Tr. 54-66.

4           After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council.

5   Tr. 1-2, 11-50, 102-378. The Appeals Council decided some of the new evidence did not relate to

6   the period at issue (Tr. 11-50), and the other new evidence did not show a reasonable probability

7   it would change the outcome of the decision (Tr. 102-378).  Tr. 2.  As the Appeals Council

8   denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision.  Tr.

9   1–4.

10                                  **DISCUSSION**

11  **A.      New Evidence**

12          Plaintiff's new evidence involves two categories: First, 277 pages of records that pre-

13  dated the ALJ's August 17, 2021, decision ("category one"); and second, forty pages of records

14  from September 2021, which post-dated the ALJ's August 17, 2021, decision but predated

15  Plaintiff's December 31, 2022, date last insured ("DLI") ("category two").  Tr. 102-378, 11-50;

16  *see* Tr. 54 (findings regarding Plaintiff's DLI).

17          Most notably, category one includes a definitive diagnosis of complex regional pain

18  syndrome ("CRPS") from pain specialist, Dr. Elisabeth Powelson, along with Dr. Powelson's

19  June 16, 2021 visit records.[1]  Tr. 347-53.  Approximately forty-five of the 277 pages of category

20

21  [1] CRPS, also known as Reflex Sympathetic Dystrophy Syndrome ("RSDS" or "RSD"), refers to
    a "unique" and "chronic pain syndrome" that may develop following even a minor injury to bone
22  or soft tissue, most often following trauma to a single extremity.  Social Security Ruling ("SSR")
    03–02p, 2003 WL 22399117, at *1.  Many individuals with CRPS are between 18 and 49 years
23  old.  *Id.* at *8.  Its primary characteristic "is a 'continuous, intense pain out of proportion to the
    severity of the injury.'" *Hunt v. Astrue*, No. EDCV 08–00299–MAN, 2009 WL 1519543, at *4
    (C.D. Cal. May 29, 2009) (quoting National Institutes of Health, National Institute of

ORDER REVERSING THE COMMISSIONER'S DECISION - 2

1    one records pertain to Dr. Powelson's June 2021 examination and diagnosis.  *See* Tr. 334-78

2    (referral to Dr. Powelson and supporting medical records from June 2021).  The remaining 232

3    pages in category one, however, largely include records related to the adjudication of Plaintiff's

4    workers' compensation claim and medical evidence that is duplicative of records already

5    contained in the administrative record ("AR").  *See* Tr. 102-333.  Category two includes medical

6    records from Plaintiff's follow-up September 1, 2021, visit to Dr. Powelson, at which time Dr.

7    Powelson reiterated her CRPS diagnosis and articulated a treatment plan for Plaintiff's CRPS.

8    *See generally* Tr. 11-50; *see also* Tr. 24-28 (treatment plan and related notes).

9                    **1.      Legal Standards**

10          Social Security Administration ("SSA") regulations permit a claimant to submit

11    additional evidence to the Appeals Council if the claimant shows good cause for not having

12    submitted it earlier.  20 C.F.R. § 404.970(b).  When good cause is shown, the regulations provide

13    that the Appeals Council will review a case based on additional evidence submitted to the

14    Council for the first time if the evidence is "material," it relates to a time period on or before the

15    ALJ's decision, and "there is a reasonable probability that the additional evidence would change

16    the outcome of the decision."  20 C.F.R. § 404.970(a)(5); *see also White v. Kijakazi*, 44 F.4th

17    828, 835–36 (9th Cir. 2022) (reiterating standards).

18          When the Appeals Council "considers" the new evidence "in denying review of the ALJ's

19    decision, [it becomes] part of the administrative record, which the district court must consider in

20    determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*

21

22    _____

23    Neurological Disorders and Stroke Complex Regional Pain Syndrome Information Page,
      http://www.ninds.nih.gov/disorders/reflex-sympathetic-dystrophy); *see also* SSR 03–02p, 2003
      WL 22399117, at *5 (recognizing that the signs and symptoms of CRPS "may remain stable over
      time, improve, or worsen").

ORDER REVERSING THE COMMISSIONER'S DECISION - 3

*v. Commissioner of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012).   That includes new evidence that the Appeals Council considered but failed to exhibit, like categories one and two here.  *See Williams v. Berryhill*, No. 17-5885-BAT, 2018 WL 6737511, at *3 (W.D. Wash. Apr. 19, 2018) (concluding that the Appeals Council's statement that it "did not consider and exhibit this evidence," was contradicted by the Appeals Council's subsequent finding that the "evidence d[id] not show a reasonable probability that it would change the outcome of the decision," and holding that the new evidence was "thus reviewable by the Court in determining whether the ALJ's decision remain[ed] supported by substantial evidence"); *see also* Tr. 2.  If the Appeals Council mistakenly fails to consider new evidence based on an erroneous assessment of that evidence, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011); *accord Edgecomb v. Berryhill*, 741 F. App'x 390, 393 (9th Cir. 2018).

### 2.    Good Cause

Plaintiff argues that there is good cause for the delayed submission of the CRPS diagnosis and related evidence because Dr. Powelson's June 2021 visit records were signed by Dr. Powelson after Plaintiff's June 2021 hearing commenced, and the September 2021 records post-dated the hearing and the ALJ's decision.  Dkt. 10 at 5.  Plaintiff, however, has not offered any reason, in support of her submission of the additional records (which included many duplicative records) in category one dated prior to June 2021.  *See* Tr. 102-333.  Neither the Commissioner nor the Appeals Council addressed the issue.

Based on Plaintiff's argument and the lack of opposition, the Court concludes good cause exists regarding the category one and category two records that pertain to Plaintiff's CRPS diagnosis and related visits, including Tr. 11-50 and Tr. 334-378 (hereinafter the "new CRPS

1    evidence"). Those records came into existence immediately prior to and following the ALJ's

2    June 2021 hearing. *See Chase v. Colvin*, 665 F. App'x 583, 587 (9th Cir. 2016) (quoting *Mayes*

3    *v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001)) (holding that "good cause" exists where "the

4    new evidence was unavailable earlier"). However, the pre-June 2021 documents are largely

5    duplicative of the evidence the ALJ considered, and the Court as discussed below finds remand

6    for further proceedings is necessary. The Court, accordingly, need not further discuss the records

7    found at Tr. 102-333 in conjunction with Plaintiff's assignment of error regarding new evidence.

8             **3.    Materiality and Impact on ALJ's Decision**

9             Plaintiff argues the new CRPS evidence is material because it includes a formal diagnosis

10   of CRPS, the signs and symptoms of which were already supported by objective medical

11   evidence in the record. *See* Dkt. 10 at 4 (multiple citations to the record). Plaintiff notes the ALJ

12   specifically declined to find CRPS was a severe impairment based on the absence "of a formal

13   diagnosis of CRPS in the record," and argues the ALJ's reasoning suggests he would have given

14   more consideration to the medical evidence and testimony regarding the signs and symptoms of

15   CRPS if he had a formal diagnosis. *See* Tr. 57.

16            The Commissioner responds a diagnosis alone is insufficient to establish the existence of

17   a medically determinable impairment at step two, suggesting the new CRPS diagnosis would not

18   have changed the ALJ's step two analysis. Dkt. 17 at 3. The Commissioner further argues even

19   though there was no formal CRPS diagnosis, the ALJ adequately considered Plaintiff's pain in

20   assessing her RFC at step four.

21            Plaintiff counters the ALJ did not in fact address all of her CRPS symptoms, including

22   her "motor weakness at the upper extremities, cool hands with evidence of impaired perfusion,

23   delayed capillary refill in hands and nailbeds, and swelling in [her] hands." Dkt. 10 at 4, Dkt. 18

1    at 2.  Plaintiff further notes the new CRPS evidence is not limited to the diagnosis itself but

2    includes Dr. Powelson's abnormal examination findings as well.  *See* Tr. 27, 345 (Dr. Powelson

3    found Plaintiff satisfied the "Budapest criteria for her bilateral upper extremity pain," and

4    explained how Plaintiff's multiple symptoms satisfied the four-step CRSP diagnostic criteria).

5        The Court concludes the new CRSP evidence is material because it provides new insight

6    on existing medical evidence and testimony regarding physical symptoms the ALJ found were

7    "out of proportion" to the objective medical evidence, and, additionally, because it provides

8    context for mental impairments and symptoms the ALJ deemed "situational" or similarly

9    unsupported by the longitudinal evidence.  *See Holster v. Berryhill*, No. C17-5578-BAT, 2018

10   WL 571798, at *2 (W.D. Wash. Jan. 25, 2018) (citing *Mayes*, 276 F.3d at 462) (noting new

11   evidence is material "if it bears directly and substantially on the matter in dispute and if there is a

12   reasonable possibility that the new evidence would have changed the outcome of the

13   administrative hearing"); *see also* Tr. 59 (concluding that Plaintiff's "physical complaints are out

14   of proportion to the medical record"); Tr. 61.  Contrary to the Commissioner's argument

15   otherwise, the Court agrees there is a reasonable probability the diagnosis would have altered the

16   outcome given the existing medical evidence of record and the ALJ's express reliance on the

17   absence of a diagnosis in his sequential analysis at step two.  *See* Tr. 57.  Moreover, the records

18   show the ALJ's existing step four analysis did not adequately address Plaintiff's CRPS and

19   related symptoms.

20       The Court notes Plaintiff's new CRSP evidence, at a minimum, triggers the ALJ's

21   obligation to consult the relevant social security ruling, SSR 03-02p, which itself requires the

22   ALJ to reassess his steps two and four conclusions in light of additional considerations detailed

23   in that ruling.  *See* SSR 03-2p, Titles II and XVI:  Evaluating Cases Involving Reflex

Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome, 2003 WL 22399117 (Oct. 20, 2003); *Givens v. Kijakazi*, No. 19-35671, 2022 WL 1486829, at *1 (9th Cir. May 11, 2022) (holding that ALJ erred in evaluating evidence related to claimant's CRSP, including her testimony and the medical opinions, where the ALJ failed to consult SSR 03-02p, but instead stated simply that she had "considered all of the claimant's established symptoms and resulting functional limitations – regardless of the diagnostic label – in assessing [the claimant's RFC]"); *Saffaie v. Berryhill*, 721 F. App'x 709, 710 (9th Cir. 2018) ("The ALJ's failure to analyze [the claimant's] CRPS diagnosis in accordance with SSR 03-02p was not a harmless error.").

Specifically, SSR 03-02p provides CRPS can be established at step two as a medically determinable impairment by the persistence of pain complaints "that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs in the affected region at any time following the documented precipitant:" swelling; autonomic instability (including changes in skin color, texture, or temperature; change in degree of sweating; and abnormal pilomotor erection (goosebumps)); abnormal hair or nail growth; osteoporosis; or involuntary movements of the affected region of the initial injury. 2003 WL 22399117, at *4. As Plaintiff accurately notes, the record demonstrates Plaintiff suffered from several of these symptoms. *See* Dkt. 10 at 4 (citing Tr. 708, 727, 749, 758, 768, 774, 779-80, 937, 940-41, 1102, 1365).

In determining the RFC of an individual who has CRPS, SSR 03-02p further requires the ALJ to consider "all of the individual's symptoms . . . in deciding how such symptoms may affect functional capacities" with "[c]areful consideration . . . [of] the effects of pain and its treatment on an individual's capacity to do work-related physical and mental activities in a work setting on a regular and continuous basis." 2003 WL 22399117, at *7. The ruling recognizes

that, "[c]onflicting evidence in the medical record is not unusual in cases of [CRPS] due to the transitory nature of its objective findings and the complicated diagnostic process involved" and, in turn, requires "[c]larification of any such conflicts in the medical evidence . . .  first from the individual's treating or other medical sources." *Id.* at *5; *see also id.* at *4 (recognizing that "longitudinal clinical records reflecting ongoing evaluation and treatment . . . especially [from] treating sources are extremely helpful" in evaluating a disability claim based on CRPS).  Finally, because chronic pain is an "expected symptom" of CRPS, "careful consideration" must be given to the evaluation of the credibility of the claimant's pain. *Id.* at *6–*7.

Here, Plaintiff's treating physicians, Drs. Cheryl Hayes, and Carrie Hardy, both opined that based on her pain and physical impairments, Plaintiff was limited to either sedentary or less than sedentary work.  *See* Tr. 1415-18 (Dr. Hardy's April 2021 opinion Plaintiff was limited to less than sedentary work based on her diagnosed brachial plexus disorder and radiating bilateral arm pain and hand pain, headaches, swelling, depression, disrupted sleep, and decrease in grip strength); 879-83 (Dr. Hayes' November 2018 opinion that Plaintiff was limited to sedentary work based on her diagnosed thoracic outlet syndrome, ulnar neuropathy, and her constant neck pain with headaches, radiating pain in her thoracic region, and bilateral pain down arms, wrists, and hands, tingling, and numbness).  In concluding that Plaintiff possessed an RFC for light work, the ALJ rejected treating Drs. Hardy's and Hayes' opinions for the very reasons anticipated and addressed by SSR 03-02p:  inconsistencies and conflicts in the evidence.  Tr. 63.

The same was the case with the ALJ's rejection of the November 2018 opinion of examining psychologist, Dr. Luci Carstens, regarding Plaintiff's mental impairments.  *See* Tr. 63-64 (rejecting Dr. Carsten's opinion regarding the existence of several marked impairments as inconsistent with the record); *see also* SSR 03–02p, 2003 WL 22399117, at *5 (noting that the

1   symptoms and treatment of CRPS may impact a claimant's cognition and mood, including,

2   specifically, "an individual's ability to maintain attention and concentration").  Despite

3   recognizing the conflicting nature of the evidence in rejecting Plaintiff's testimony and the

4   treating and examining medical opinions at step four, the ALJ did not discuss or apply SSR 03-

5   02p – presumably because, at that point, the ALJ did not have evidence of a formal CRSP

6   diagnosis.  *See* Tr. 59-64; *see also* Tr. 60 (rejecting Plaintiff's testimony and noting evidence that

7   in 2018, Plaintiff "had seen multiple specialists regarding her symptoms with no definitive

8   diagnosis").

9          For these reasons, the ALJ is required to consider on remand the new CRPS evidence (Tr.

10   11-50, 334-378) because it directly and substantially impacts Plaintiff's case, and there is a

11   reasonable possibility that the new evidence would have changed the outcome of the

12   administrative hearing.  In doing so, the ALJ must also re-evaluate the medical opinions and

13   Plaintiff's testimony in accordance with SSR 03-02p.

14          **B.    Additional Issues**

15          Because the new CRSP evidence necessarily requires the ALJ to reassess on remand

16   Plaintiff's other arguments regarding Plaintiff's testimony and the medical opinions the Court

17   concludes the Court the ALJ shall on remand reassess Plaintiff's testimony and the other medical

18   opinions.  The Court also notes Dr. Harmon's statement at Tr. 915-16 appears to constitute a

19   "medical opinion," which the ALJ should evaluate along with the other medical opinions on

20   remand.[2]  *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Although the Court did not consider

21

22   _____

    [2] Plaintiff notes that the ALJ failed to consider the November 2018 medical opinion from
    psychologist, Dr. Dana Harmon.  Dkt. 10 at 15-16; *see also* Tr. 915-16, 63-64.  The

23   Commissioner counters that Dr. Harmon's submission did not constitute a "medical opinion"
    because she failed to state what Plaintiff "can do despite [her] limitations."  Dkt. 17 at 18. The
    Court disagrees.  *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2017 revisions updated

the pre-June 2021 documents that Plaintiff submitted to the Appeal Council, the ALJ is directed to consider these records on remand.

## CONCLUSION

The Commissioner's decision is REVERSED, and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ shall consider the new CSRP evidence at steps two and four of his sequential analysis in accordance with SSR 03-02p, which requires the ALJ to re-evaluate Plaintiff's testimony and the medical opinions regarding Plaintiff's physical and mental impairments.  The AJ shall also consider the pre-2021 records submitted to the Appeals Council, develop the record as necessary and redetermine Plaintiff's RFC as needed. The ALJ shall proceed to the remaining steps of the disability determination process as appropriate.

DATED this 15th day of February, 2023.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

---

regulations to define a "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions . . . .").  Dr. Harmon opined that while she "did not see strong evidence of any significant limitations in [Plaintiff's] work-related cognitive functioning," she nevertheless agreed with Dr. Carstens regarding the limitations associated with Plaintiff's social functioning. Tr. 915-16.  Dr. Carstens, in turn, opined that Plaintiff possessed marked impairments in her abilities to communicate and perform effectively in a work setting and to maintain appropriate behavior in a work setting.  Tr. 889.